L. HELLER & SON (INC.) *v.* UNITED STATES (No. 3534)[1]

United States Court of Customs and Patent Appeals, November 30, 1932

*Puckhafer, Rode & Tompkins (George J. Puckhafer* of counsel) for appellant. *Charles D. Lawrence,* Assistant Attorney General *(Reuben Wilson,* special attorney, of counsel), for the United States.

[Oral argument October 6, 1932, by Mr. Puckhafer and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court overruling the protest of appellant and holding certain solid,

---

[1] T. D. 46058.

imitation-pearl beads, loosely strung, to be dutiable at one-half of one cent per inch and 60 per centum ad valorem under paragraph 1503 of the Tariff Act of 1930, thereby sustaining the classification made by the collector.

Appellant's protest reads as follows:

Protest is hereby made against your decision in assessing duty of 60% plus one-half of one cent per inch under paragraph 1503, on the following shipment: S/S *Olympic*—6/18/30.

| Entry number | Date of entry | Date of liquid. |
|---|---|---|
| 949907 | 6/20/30 | 8/18/30 |

Since it appears to be a clerical error on the part of your office in making this assessment, in view of the appraiser's report returning the merchandise properly dutiable at 60% only as imitation solid-pearl beads, valued at less than one-fourth of one cent per inch, the merchandise contained in the shipment being properly dutiable as originally entered at 60% under paragraph 1503, we respectfully request that the customs entry be reliquidated with the proper assessment of duty as herein stated.

The pertinent part of said paragraph 1503 of the Tariff Act of 1930 reads as follows:

* * * imitation solid-pearl beads, valued at not more than one-fourth of 1 cent per inch, 60 per centum ad valorem; valued at more than one-fourth of 1 cent and not more than 1 cent per inch, one-half of 1 cent per inch and 60 per centum ad valorem; * * *.

Appellant contends that the appraiser found the value of the beads to be under one-fourth of one cent per inch, but that the collector improperly added the sum of $7.50, the cost of the wooden and tin container in which the beads were shipped to the appraised value of the beads, with the result that the merchandise was improperly found by the collector to be of a value more than one-fourth of one cent per inch and dutiable at the higher rate.

The protest was submitted to the court below upon a stipulation and the record. The stipulation reads as follows:

It is stipulated and agreed by and between the respective parties, as follows:

1. That the merchandise consists of imitation solid-pearl beads, loosely strung on strings, put up in bundles of a dozen or more strings, wrapped in tissue paper around which is wrapped other paper and a number of bundles then packed in cardboard cartons, six of which cartons are then encased in a tin-lined wooden case.

2. That the *per se* prices of $4.85, $5.30, and $5.75 per one hundred strings, less 20% and 5% discount approved by the appraiser, included the cost of the packing of tissue paper, wrapping paper, and paper cartons.

3. That in the usual course of trade the cost of the packing of tissue paper, wrapping paper, and paper cartons is included in the *per se* cost of the merchandise.

4. That in the usual course of trade, the cost of the outer tin-lined wooden case is not included in the *per se* price of the merchandise.

5. That in the usual course of trade the cost of the outer tin-lined wooden case constitutes no part of the market value of the goods *per se*, and its value was not included by the appraiser in his appraisement of the imitation solid-pearl beads.

6. That in the usual course of trade cheap imitation solid-pearl beads are not packed in tin-lined wooden cases.

7. That a tin-lined wooden case such as contained the cardboard cartons in which the imitation solid-pearl beads were packed costs $7.50, whereas a similar wooden case without the tin lining costs $2.

8. That the *per se* value of the imitation solid-pearl beads, according to the inch measures as found by the appraiser in the condition as imported, wrapped in tissue paper and other paper and packed in cardboard cartons (but not including the value of the tin-lined wooden case) is .002441 cent per inch, or less than one-fourth of one cent per inch.

9. That if the cost of a tin-lined wooden case, to wit, $7.50, is added to the appraiser's *per se* value of the imitation solid-pearl beads, the same are of a value in excess of one-fourth of one cent per inch.

10. That if the cost of a plain wooden case, to wit, $2, is added to the appraiser's *per se* value of the imitation solid-pearl beads, the same are valued at .002459 per inch, or less than one-fourth of one cent per inch.

11. That in the usual course of trade, cheap imitation pearl beads are exported to the United States in plain wooden cases, not tin lined.

12. The protest is submitted on this stipulation and the record.

The record consists in part of an invoice with notations thereon, together with the appraiser's report and the consumption entry.

Upon the face of the consular invoice appears a typewritten slip describing the merchandise and giving a price per unit, and a total invoice price of $381.77, less 20 per centum discount and 5 per centum discount, leaving a net price of $290.15. Upon this typewritten slip the appraiser has noted in red ink the length of the strands of beads, and has also made this notation, likewise in red: "Im pearl beads under ¼¢ 60% 1503." At the bottom of this typewritten statement, typed in red, we observe the word "Continues," and, turning over to the next page, which consists of the usual form of consular invoice, we find that the total valuation on the typewritten slip, $290.15, has been carried forward to the invoice. Immediately below this entry are found the words "Consular fee," opposite which and under the figures $290.15 are found the figures 2.50, encircled in black ink, with the letter "X" within the circle and before the figures 2.50. Immediately below this entry there is found the following: "1 wooden & tin case," opposite which and beneath the figures 2.50 are found the figures 7.50. Below this entry is found a total of $300.15.

A sheet entitled "Summary of examination and appraisement," which is the report of the appraiser, is attached to the entry and contains the printed notation that—

A check mark (√) indicates that appraisement, classification, or quantities are as entered or that packing charges are believed to be correct.

Immediately below this notation are eight columns, headed respectively, "Marks and numbers," "Examiner and date of examination," "Appraised," "Advisorily classified," "Quantities," "Packing charges," "Date of delivery order," and "Remarks." A check mark in red is found in the column headed "Appraised," and a like check mark is

found in the column headed "Packing charges." The reverse side of said sheet has a heading: "Summary of entered value," upon which, under the heading "Statistical," are found two columns, one headed "Quantity" and the other "U. S. dollars." In the column under "Quantity" is found, in typewriting, "165 lb. 7203 pcs.," and in the "U. S. dollars" column, also in typewriting, there is found "$298." To the right of this is found the following, also typewritten:

$$\begin{array}{r} \$300.\,15 \\ \text{NDC} \quad 2.\,50 \\ \hline \$297.\,65 \end{array}$$

The report of the collector found in the record, which seems to have been treated by both parties as a part of the record, the Government specifically quoting a part of it in its brief, reads as follows:

Respectfully referred to the U. S. Customs Court for decision.

The merchandise in question is invoiced as imitation pearls and returned by the appraiser as imitation-pearl beads under paragraph 1503, act of 1930.

The invoiced and entered value includes a charge for one wooden and tin case, and a proportionate part of the charge added to the *per se* unit value of the several items shows the beads to be valued at more than one-fourth of one cent and not more than one cent per inch.

Duty was accordingly assessed at one-half of one cent per inch and 60% under paragraph 1503, act of 1930. Note section 503 (a), act of 1930, and T. D. 40961.

The protest was received within the statutory time.

Under this state of facts appellant contends that the cost of the container, $7.50, was no part of the appraised value of the merchandise as returned by the appraiser, but that it was added by the collector in determining the rate of duty at which the merchandise should be assessed, whereas, under the provisions of section 503 of the Tariff Act of 1930, it was his duty, in determining the rate of duty, to have accepted the appraised value returned by the appraiser and to have based the rate thereon.

Paragraphs (a) and (c) of said section 503 read as follows:

(a) GENERAL RULE.—Except as provided in section 502 of this Act (relating to withdrawal from manipulating warehouses) and in subdivision (b) of this section, the basis for the assessment of duties on imported merchandise subject to ad valorem rates of duty shall be the entered value or the final appraised value, whichever is higher.

(c) BASIS OF RATE.—For the purpose of determining the rate of duty to be assessed upon any merchandise when the rate is based upon or regulated in any manner by the value of the merchandise, the final appraised value shall (except as provided in section 562 of this Act) be taken to be the value of the merchandise.

Paragraph (c) of section 402 of the Tariff Act of 1930 reads as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to

the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Paragraph (d) of said section 402, defining export value, contains similar provisions respecting the cost of containers, etc.

Subdivision (1) of section 500 (a) of said Tariff Act of 1930, said section prescribing the duties of appraising officers, reads as follows:

(1) To appraise the merchandise in the unit of quantity in which the merchandise is usually bought and sold by ascertaining or estimating the value thereof by all reasonable ways and means in his power, any statement of cost or cost of production in any invoice, affidavit, declaration, or other document to the contrary notwithstanding;

The Government contends that under appellant's protest the only issue raised is that of clerical error upon the part of the collector and that no clerical error has been shown. It further contends that the collector accepted the appraised value returned by the appraiser and that said appraised value was the same as the entered value and included the cost of the container.

The lower court found that the protest sufficiently alleged legal error as well as clerical error; it further found that the collector added the cost of the container to the appraised value of the merchandise *per se* as returned by the appraiser, and that he, the collector, properly arrived at the rate of one-half of one cent per inch and 60 per centum ad valorem by dividing the total number of inches of beads, to wit, 117,649, into the total number of dollars, taking the value of the merchandise to be $297.65, which included the cost of the container.

We are in agreement with the lower court in its holding that the protest did not raise the issue of clerical error alone, but should be construed as also raising the issue of legal error. No clerical error is established.

With respect to the contention of appellant that the appraised value of the merchandise did not include the cost of the container we conclude that it did not. The cost of the container not having been included in the appraisement, the collector had no right, under the last provision of section 503 above quoted, to consider such cost in determining the *rate* to be applied to the merchandise. If he was dissatisfied with the appraisement made, he should have appealed to reappraisement. *United States* v. *Mills & Gibb Corp.*, 13 Ct. Cust. Appls. 137, T. D. 40963.

We may say in passing that paragraph (c) of said section 503 is new in the Tariff Act of 1930, and, according to Committee Report No. 7, page 176, of the Seventy-first Congress, first session, which accompanied H. R. 2667, the purpose in adding the provision to

section 504 (now 503) was to make the rate to be applied to merchandise dependent upon the final appraised value, even though the same were less than the entered value. Therefore, the only question that it is necessary for us here to determine is whether the final appraised value as returned by the appraiser included the cost of the container, amounting to $7.50.

The report of the appraiser heretofore referred to shows, we think, that the cost of the container was not included in his appraised value. We find, first, from the notation in red ink on the invoice, that the beads were valued by the appraiser under one-fourth of one cent per inch. We find upon the sheet which constitutes the report of the appraiser to the collector check marks indicating that the entered value of the beads, $290.15, was approved and that separately the packing charges as entered were approved, which latter, we take it, referred to the charge for one wooden and tin container, $7.50. This would indicate that the cost of the container was not included in his appraised value. This conclusion is borne out by the report of the collector, which states that—

> The *invoiced* and *entered value* includes a charge for one wooden and tin case and a proportionate part of the charge, added to the *per se* unit value of the several items, shows the beads to be valued at more than one-fourth of 1 cent and not more than one cent per inch. (First line italics ours.)

The collector's reference to the *invoiced* and *entered value* indicates very strongly that he did not consider that the *appraised value* included this charge but that, as found by the lower court, he added the amount to the appraised value returned by the appraiser.

Paragraph 5 of the stipulation further confirms our conclusion that the value of the container was not included by the appraiser in his appraised value; said paragraph reads as follows:

> That in the usual course of trade the cost of the outer tin-lined wooden case constitutes no part of the market value of the goods *per se*, and its value was not included by the appraiser in his appraisement of the imitation solid pearl beads.

Inasmuch as the appraised value of the merchandise returned by the appraiser did not include the cost of the container, $7.50, it was the duty of the collector to determine the rate upon the value as returned by the appraiser or to appeal to reappraisement; this he failed to do, and the protest of appellant, claiming the merchandise properly dutiable at 60 per centum ad valorem only as imitation-pearl beads, valued at less than one-fourth of one cent per inch, should be sustained.

The judgment of the United States Customs Court is *reversed*, and the cause is *remanded* for further proceedings not inconsistent with the views herein expressed.

CONCURRING OPINION

GRAHAM, Presiding Judge: I concur in the conclusion, but I am of opinion that the case should have been disposed of, in so far as the inclusion of the cost of container in the appraisement is concerned, on the stipulation of the parties, quoted in full in the majority opinion.

This definitely settles the question as to whether the $7.50, cost of the tin-lined container, was included by the appraiser in his appraisement of the beads. Paragraph 5 of this stipulation recites that it was not so included. Therefore no necessity exists for an examination of the papers to ascertain the facts in that regard, and the discussion thereon decides an issue not in the case.

It is true the Government argues that the stipulation was not intended to be conclusive in that regard. The parties should abide by their stipulation unless by further stipulation it be withdrawn or modified, which is not the case here. *Progressive Fine Arts Co.* v. *United States*, 18 C. C. P. A. (Customs) 306, T. D. 44506.